OPINION
The Lake County Court of Common Pleas, following a trial to the court sitting without a jury, executed a ten-page opinion and judgment, granting judgment to appellee, Cleveland Construction, Inc. ("CCI"), for $20,659.97. Appellant, Gatlin Plumbing and Heating, Inc. ("Gatlin"), appeals assigning two errors:
 "[1.] The trial court erred when it enforced a contract provision which imposed an unlawful and unconscionable penalty against [Gatlin].
 "[2.] The trial court's application of the 25% `overhead and profit' penalty was against the manifest weight of the evidence."
CCI raised the following assignment of error in its cross-appeal:
 "The trial court erred to the prejudice of [CCI] in entering a money judgment against it where [Gatlin] filed no [c]ounterclaim in the action seeking such a judgment."
On April 10, 1996, CCI filed a complaint in the Lake County Court of Common Pleas for breach of contract. In Indiana, on April 26, 1996, Gatlin filed a mechanic's lien in the amount of $257,015.67. Gatlin answered CCI's complaint on July 30, 1996. Both parties filed trial briefs in the matter. On July 1, 1998, Gatlin submitted an amended answer. Thereafter, on August 19, 1998, Gatlin filed a motion for leave to file a second amended answer with a counterclaim, which the trial court overruled. The bench trial was conducted on August 25 and 26, 1998.
CCI, an Ohio corporation, and Gatlin, an Indiana corporation, entered into a subcontract agreement on November 30, 1995. CCI, the general contractor, entered into a contract with Wal-Mart Stores, Inc. ("Wal-Mart") to construct a Wal-Mart Supercenter in Indiana, and then subcontracted the agreement to Gatlin. Gatlin agreed to perform certain work in return for payment in the amount of $586,215 from CCI. The work commenced in December 1995, and was to be completed by June 1996. However, in March 1996, Gatlin left the Wal-Mart work site as the result of a labor dispute and picketing on the site. On March 20, 1996, pursuant to one of the terms in the agreement, CCI informed Gatlin that it was in default of the subcontract for its lack of manpower.[1] CCI further advised that the contract would be terminated if the default continued for more than three days under Article 32 of the contract. On March 22, 1996, CCI faxed a letter to the president of Gatlin informing him that the contract with Gatlin had been terminated.[2]
Gatlin was paid for work completed in December 1995 and January 1996, but was not compensated for work it performed in February 1996 and March 1996. Following CCI's termination of the subcontract with Gatlin, CCI hired replacement contractors. As a result of CCI's use of the replacement contractors, the project was delayed by about one month. CCI presented evidence as to the direct costs paid to the replacement contractors to complete the work, which was unfinished by Gatlin. CCI also offered evidence of indirect costs incurred by it as a result of Gatlin and two other subcontractors failing to man the jobsite.
In its opinion and judgment dated March 1, 1999, the trial court concluded that Gatlin anticipatorily breached the contract with CCI, and thus, rendered judgment in favor of CCI. Although the judgment favored the claims of CCI, it granted a money award to Gatlin because there was work done previously on the subcontract for which CCI owed Gatlin and periodic payment had not been made.
In its first assignment, Gatlin contends that the trial court's enforcement of the twenty-five percent overhead and profit provision was a matter of contract interpretation and is a question of law subject to de novo review by this court. It also claims that although parties are free to enter into a provision that sets forth damages in the event of default, the condition here amounts to a penalty and is unenforceable.
Money damages awarded for breach of contract are designed to place an aggrieved party in the same position it would have been had the contract not been breached. Schulke Radio Productions,Ltd. v. Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436, 439. Contract damages may only be compensatory. Lake Ridge Academy v.Carney (1993), 66 Ohio St.3d 376, 381. Liquidated damages, damages provided for in the event of a breach, which are consistent with the principle of compensation, are permitted. Id. However, when a stipulated damages provision is challenged, it is to be considered in light of what the parties knew when the contract was formed, and in light of an estimate of the actual damages. Id. at 382.
In Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27, syllabus, the Supreme Court of Ohio set forth a three prong test in order to uphold a liquidated damages provision:
 "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."
In Samson, the Supreme Court also stated, "[w]hether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case * * *."Id. at 28-29.
The evidence at trial revealed that when Gatlin was terminated, it had already been paid approximately $149,255.10 for work completed in December 1995 and January 1996. However, Gatlin was not compensated for work performed in February and March of 1996. Gatlin was to be paid $153,297 for work performed in February 1996, but no evidence was presented as to the value of the work Gatlin did in March 1996. CCI declares that it expended about $316,422.65 in direct costs and $148,553.03 in indirect costs. The trial court ruled that CCI expended $295,706.18 in direct costs to complete Gatlin's work. In addition, the trial court determined that CCI spent $93,416.28 in indirect costs to finish Gatlin's portion of the project.[3] As a result of Gatlin's breach, CCI incurred total costs of $389,122.46. Hence, pursuant to the formula in Article 32(d), the trial court added the total cost of Gatlin's breach, $389,122.46, to the amount already paid to Gatlin, 149,255.10, for a total of $538,377.56, and then subtracted that number from the adjusted price of the contract, $559,037.53. Accordingly, the trial court awarded Gatlin $20,659.97.
Gatlin claims that the three prongs of Samson test were not met. We disagree. First, the damages were uncertain as to amount and difficult to prove as verified by the trial court's analysis in its judgment. Therefore, the first prong of the test was met. Second, the contract as a whole was not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify a conclusion that did not express the true intention of the parties. Gatlin and CCI voluntarily entered into an agreement permitting CCI to claim as overhead and profit an additional twenty-five percent of its cost to complete and other damages. We agree with the trial court's determination that the contract was "agreed upon by commercially sophisticated parties at an arms length transaction." Hence, the second prong of the test was met. Finally, since the contract was the intention of the parties, damages in the amount stated in the judgment entry should have followed the breach. The third prong of the test was met. The liquidated damage provision, executed by competent professional business persons acting at arms length is not an unlawful or unconscionable penalty clause and was properly triggered by the parties in this case. Accordingly, Gatlin's first assignment of error is overruled.
In its second assignment, Gatlin alleges that the trial court's application of the twenty-five percent "overhead and profit" clause was against the weight of the evidence.
In Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, the Supreme Court of Ohio held:
 "[J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
In evaluating the claim that the liquidated damage provision of the contract was an unenforceable penalty and applying the test announced inSamson, the court was obliged to weigh the evidence, determine the factual issues raised in Samson, and apply that law to the facts found.
It is patent from an examination of the ten-page, single-spaced, opinion and judgment of the trial court that the judge, sitting without a jury, painstakingly absorbed the voluminous evidence, sorted the issues out, made the math calculations contemplated by the parties in their original contract, and rendered judgment consistent with the found facts. The judgment is not contrary to the manifest weight of the evidence. Gatlin's second assignment of error is overruled.
CCI, contends, by cross-appeal, that the trial court erred in entering a money judgment against it because Gatlin did not file a counterclaim seeking affirmative relief.
In the case sub judice, the original complaint, and all of the proceedings that followed invited the court to interpret and apply the contract to the factual status of the relationship between the parties. This the court did.
CCI opts for a literal interpretation of Civ.R. 13 and a conclusion that a counterclaim was mandatory, and failure to plead denied the court the authority to award the affirmative judgment. Gatlin argues that denying the affirmative relief would unjustly and unfairly enrich the otherwise prevailing party, CCI.
We conclude, as did the trial court, that the logical, factual consequence of the proper and complete interpretation of the subcontract requires the quotient affirmative judgment rendered. That decision is neither an abuse of discretion, nor contrary to law. Rather, it is consistent with the pronounced purpose of the Civil Rules: "[t]hese rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ.R. 1(B). Further, Civ.R. 54(C), recites, in part that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the proceedings." Hence, CCI's assignment on cross-appeal is overruled.
Each of the assigned errors is overruled, and the judgment of the Lake County Court of Common Pleas is affirmed.
 ____________________________________ JUDGE JOHN R. MILLIGAN, Ret.,
Fifth Appellate District, sitting by assignment.
NADER, J., O'NEILL, J., concur.
[1] This clause was labeled Article 27 and contained a "harmony clause" in which Gatlin agreed to not let any labor disputes of any kind to occur or be manifested on the project. This article also gave CCI the right after twenty-four hours notice to declare Gatlin in default and take measures as necessary to finish Gatlin's work on the project.
[2] Specifically, Article 32(a) specified that three days after written notice of Gatlin's failure to perform, CCI had the right to terminate Gatlin's right to proceed with the work. Article 32(d) stated that Gatlin would "not be entitled to any further payment until the entire Work [was] accepted by Owner, at which time, [CCI] shall pay to [Gatlin] the excess, if any, of the balance of the Contract Price as adjusted over [CCI's] cost of completion and all damages of [CCI] together plus 25% for [CCI's] overhead and profit, plus costs of others resulting from such default * * *." Gatlin was responsible for paying CCI "the excess of [CCI's] costs of completion and any damages incurred by [CCI] and others by reason of [Gatlin's] default over the balance otherwise owed on the Contract Price promptly upon submission of bill for same."
[3] This number took into account Article 32(d) of the agreement, the twenty-five percent "overhead and profit" damages provision.